FILED
8/2/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

    v.

SEAN PATRICK BOVEE,
AKA DUVENEZ,

                Appellant.

No. 80116-3-I

DIVISION ONE

UNPUBLISHED OPINION

PER CURIAM — Sean Bovee appeals an order revoking his special sex offender sentencing alternative sentence (SSOSA). He contends that the trial court exceeded its authority and violated Bovee's right to be free from double jeopardy by considering prior violations in connection with revoking Bovee's SSOSA. Bovee also contends that the trial court erred in determining that compliance with a separately entered sexual assault protection order (SAPO) was a condition of Bovee's SSOSA and, thus, erred by revoking the SSOSA based in part on SAPO violations. In a statement of additional grounds for review, Bovee asserts further that he was deprived of his constitutional right to be charged by a grand jury. We affirm.

FACTS

Bovee pled guilty in 2014 to one count of child molestation in the first degree and one count of rape of a child in the first degree for abusing his wife's daughter, H.M.B. As part of the plea agreement, Bovee and the prosecutor agreed that the prosecutor would recommend a SSOSA with five months' confinement, followed by a lifetime of

Citations and pin cites are based on the Westlaw online version of the cited material.

community custody.  They also agreed the prosecutor would recommend that Bovee be subject to a no-contact order with H.M.B.  Consistent with this recommendation, the trial court sentenced Bovee to 89 months of confinement on the molestation count and 130 months of confinement on the rape count, to be suspended for the duration of a SSOSA.  The trial court's judgment and sentence, which consists of a pre-printed form, orders Bovee to "comply with the community custody conditions in paragraph 4.2."  Paragraph 4.2 of the judgment and sentence orders Bovee to, among other things, follow the recommendations listed in "Appendix A" and follow all conditions listed in "Appendix F."  Appendix A to the judgment and sentence provides, as relevant here, that Bovee "should have no contact of any kind with his victim, [H.M.B.]"  Appendix F requires, as relevant here, that Bovee "[o]bey all laws," "[h]ave no direct or indirect contact with HMB for life," "not possess or consume alcohol," and "[c]omply with all Conditions, Requirements, and Instructions . . . in [the] Judgment and Sentence."

The "Sentence and Order" section of the judgment and sentence contains a Section 4.5 titled, "No Contact."  Section 4.5 has three top-level check-box options, as follows:

[  ] The defendant shall not have contact with _____ (name) including, but not limited to, personal, verbal, telephonic, written or contact through a third party until _____ (which does not exceed the maximum statutory sentence).

[  ] The defendant is excluded or prohibited from coming within _____ (distance) of: [  ] _____ (name of protected person(s))'s [  ] home/ residence [  ] work place [  ] school [  ] (other location(s)) _____, or [  ] other location: _____, until _____ (which does not exceed the maximum statutory sentence.

[  ] A separate Domestic Violence No-Contact Order or Antiharassment No-Contact Order is filed concurrent with this Judgment and Sentence.

In Bovee's judgment and sentence, only the third option was checked; the first two were left blank. Although it is not part of the record on appeal, it is undisputed that the trial court entered a separate SAPO protecting H.M.B. It also is undisputed that the SAPO prohibits Bovee from having any direct or indirect contact with H.M.B. or knowingly coming within or knowingly remaining within 1,000 feet of H.M.B.'s residence or place of employment.

In January 2019, the State moved to revoke Bovee's SSOSA. The State's motion was based on an October 11, 2018 Department of Corrections (DOC) violation report specifying the following violations:

Violation 1:
Violating a Court Order by having contact with HMB on or about 9/10/2018 at Taco Bell in Oak Harbor, Washington.

Violation 2:
Violating the [SAPO] . . . by being present at and remaining at . . . HMB's place of employment [Taco Bell] on or about 9/10/2018 while HMB was working.

Violation 3:
Violating the [SAPO] . . . by being present at HMB's place of residence on 10/10/2018.

Violation 4:
Violating a Court Order by having regular ongoing indirect (third party) contact with HMB through . . . HMB's mother and grandparents prior to 10/10/2018.

Violation 5:
Violating a Court Order by consuming alcohol on 10/10/2018.

In April 2019, the State filed a memorandum in support of its revocation motion. In it, the State indicated it did not intend to proceed on Violation 4 described in the DOC violation report. Instead, the State alleged only the following violations:

3

1.  On or about 9/10/18, the defendant violated a condition of his SSOSA by having contact with HMB (violation 1).

2.  On or about 9/10/18, the defendant violated the law (compliance with the law is a SSOSA requirement) by violating a [SAPO] by going to HMB's place of employment (violation 2).

3.  On 10/10/18, the defendant violated the law by violating a [SAPO] by going to HMB's residence (violation 3).

4.  On 10/10/18, the defendant violated a condition of his SSOSA by consuming alcohol (violation 5).

The State also relied on the following prior violations in support of revocation: (1) two 2014 DOC violation reports; (2) seven violations to which Bovee stipulated in 2016, six of which involved alcohol consumption and possession; and (3) additional violations in 2016 involving Bovee's use of breathing countermeasures on polygraph examinations. No action was taken with regard to the two 2014 violation reports; however, Bovee was sanctioned for the other violations.

In May 2019, the parties stipulated to the following:

1.  The Judgment and Sentence imposing a SSOSA sentence in this case shall be admitted as evidence.

2.  The [SAPO] entered in this case at the time of sentencing shall be admitted as evidence.

3.  On September 10, 2018, Mr. Bovee entered a Taco Bell restaurant where HMB was employed.

4.  The attached transcript of a defense interview with HMB shall be admitted as evidence.

5.  Mr. Bovee violated the terms of the SSOSA sentence by being present in the driveway of HMB's residence on October 10, 2018. HMB was not present at that time.

    . . . .

7.  Mr. Bovee violated the terms of the SSOSA sentence by consuming alcohol on or about October 10, 2018.

In H.M.B.'s defense interview, the admission of which was stipulated to, H.M.B. stated that she was working at the Taco Bell front counter when she realized that Bovee "walked in and he made eye contact and he, he stayed for a few minutes and then he left after that." H.M.B. stated that Bovee was probably 4 or 5 feet away from her. She also stated she was convinced Bovee knew she was working because it was common knowledge within the family that she worked there and her vehicle was parked in front of the restaurant.

The trial court held a revocation hearing on May 29, 2019. At the hearing, the court admitted unrebutted evidence that Bovee had been convicted of two counts of violating the SAPO. The trial court concluded at the close of the hearing that Bovee's SSOSA should be revoked. In so doing, the court overruled Bovee's objection to the trial court's consideration of Bovee's previously sanctioned violations in determining whether to revoke Bovee's SSOSA.

On June 18, 2019, the trial court held a presentation hearing with regard to the State's proposed findings of fact. The State had proposed the following findings with regard to the SAPO:

> The testimony and exhibits established that the defendant has been convicted of two violations of the [SAPO] issued in this case. The convictions establish by a matter of law and fact that the defendant knowingly violated the terms and conditions of the [SAPO]. *No criminal law convictions and no criminal law violations are requirements set forth in the SSOSA judgment and sentence, as well as the requirement that the defendant abide by the [SAPO].*

(Emphasis added.) Bovee's counsel took issue with the final sentence, emphasized above. Counsel argued that the State did not provide Bovee with notice that it was seeking to revoke the SSOSA based on his convictions for violating the SAPO, as

distinct from "there being a violation of the terms of the SSOSA in terms of having contact." The prosecutor countered that this was "a distinction without a difference." The prosecutor also pointed out that although the DOC violation report attached to the State's revocation motion stated that Bovee violated the SSOSA by violating the SAPO, the State's later memorandum stated that Bovee violated the SSOSA *by violating the law* by violating the SAPO. The trial court ultimately revised the final sentence to state, "The judgment and sentence herein specifically required defendant to abide by the terms of the sexual assault protection order."

The trial court entered an order revoking Bovee's SSOSA and ordering execution of the previously suspended sentence. Bovee appeals.

ANALYSIS

Consideration of Prior Violations

Bovee argues that the trial court exceeded its authority and deprived Bovee of the right to be free from double jeopardy when it considered prior violations, for which Bovee had already been sanctioned, in connection with revoking Bovee's SSOSA.

We rejected this argument in State v. Wheeler, in which we held that "[c]onsideration of earlier condition violations for SSOSA revocations not only withstands a double jeopardy challenge, but it is logical and fair" and not inconsistent with the statutes authorizing punishment for SSOSA violations. 14 Wn. App. 2d 571, 579-80, 474 P.3d 583 (2020), review denied, 196 Wn.2d 1039 (2021). Bovee offers no good reason to depart from Wheeler. Thus, we adhere to the reasoning therein, and Bovee's challenge to the trial court's consideration of his prior violations fails.

<u>SAPO Condition</u>

Bovee next argues that reversal is required because the trial court revoked Bovee's SSOSA based on violation of a non-existent condition, i.e., a condition requiring Bovee to comply with the SAPO.[1] The State counters that "[n]o contact with H.M.B. and abiding by the SAPO were conditions of [Bovee's] SSOSA." While we agree with Bovee that the trial court erred inasmuch as it determined that compliance with the SAPO was a specific condition of the judgment and sentence and, thus, of the SSOSA, we nonetheless conclude that the trial court did not err by revoking Bovee's SSOSA.

A SSOSA may be revoked at any time "if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence or failed to make satisfactory progress in treatment." <u>State v. McCormick</u>, 166 Wn.2d 689, 705, 213 P.3d 32 (2009). "Revocation of a suspended sentence due to violations rests within the discretion of the trial court and will not be disturbed absent an abuse of discretion." <u>McCormick</u>, 166 Wn.2d at 705-06. "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " <u>McCormick</u>, 166 Wn.2d at 706.

Here, the judgment and sentence, compliance with which was a condition of the SSOSA, stated only that "[a] separate Domestic Violence No-Contact Order or Antiharassment No-Contact Order is filed concurrent with this Judgment and Sentence."

---

[1] Bovee acknowledges that he did not raise this argument below but asserts that he may raise it for the first time on appeal under RAP 2.5(a)(2) because it involves "failure to establish facts upon which relief may be granted." The State does not argue otherwise.

It neither incorporated the terms of the SAPO nor stated that Bovee must comply with the SAPO. Accordingly, Bovee is correct that the trial court erred inasmuch as it determined that the judgment and sentence specifically required Bovee to comply with the SAPO.

Nevertheless, "[i]n our review for abuse of discretion, we may affirm the trial court on any basis that the record supports, including any theories 'established by the pleadings and supported by the proof,' even if these theories were not originally considered by the trial court." State v. Arndt, 194 Wn.2d 784, 799, 453 P.3d 696 (2019) (quoting LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

Here, the judgment and sentence required Bovee to obey all laws. Bovee violated this condition by being twice convicted of violating the SAPO. The judgment and sentence also required Bovee not to have contact with H.M.B. for life. Bovee violated this condition by being present at Taco Bell while H.M.B. was working; his suggestion that this conduct did not constitute "contact" is unpersuasive. For the foregoing reasons, we conclude that the trial court did not err in revoking Bovee's sentence based on his violations of the SAPO.

Bovee asserts that affirming on the basis of non-compliance with the judgment and sentence's "obey all laws" provision deprives him of due process because the State did not rely on this provision in its initial motion to revoke the SSOSA, instead alleging only that Bovee violated the SAPO. Because revocation of a suspended sentence is not a criminal proceeding, a defendant is entitled only to minimal due process rights in a revocation proceeding. State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). These rights include a right to written notice of the claimed violations. Dahl, 139 Wn.2d

8

at 683. Here, as Bovee acknowledges, the State did provide notice that it intended to rely on the "obey all laws" condition in a subsequent memorandum, filed more than a month before the revocation hearing. Bovee cites no authority supporting the proposition that this notice was insufficient, and thus, he fails to persuade us that affirming on the basis of the "obey all laws" provision offends the minimal process due in a revocation proceeding.

## Statement of Additional Grounds for Review

In a statement of additional grounds for review, Bovee asserts that because he was charged by information, he was deprived of his Fifth Amendment right to be indicted by a grand jury. See U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.").

But under the Washington Constitution, article I, section 25, the State may prosecute an individual for offenses by either information or indictment. And, our Supreme Court has held that this provision of the Washington Constitution is not repugnant to the Fifth Amendment to the United States Constitution. State v. Nordstrom, 7 Wash. 506, 508, 35 P. 392 (1893), aff'd, 164 U.S. 705, 17 S. Ct. 997, 41 L. Ed. 1183 (1896). It has also held that the federal constitution's grand jury provision does not bind the states. State v. Ng, 104 Wn.2d 763, 775, 713 P.2d 63 (1985).

Bovee's contentions to the contrary fail.

We affirm.

_Appelwick, J._

_Chun, J._

_Dwyer, J._